UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00064-GNS

ALICIA MCMAHAN                                                                                    PLAINTIFF

v.

BYRIDER SALES OF INDIANA S, LLC
d/b/a J.D. BYRIDER; and
BYRIDER FINANCE, LLC
d/b/a CNAC                                                                                         DEFENDANTS

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Compel Arbitration and Dismiss (DN 5), Plaintiff's Motion to Amend Complaint (DN 10), and Plaintiff's Motion for Leave to File Sur-Reply (DN 14). The motions are ripe for adjudication. For the reasons outlined below, the motion to compel arbitration is **GRANTED**, and the motion to amend and motion for leave to file a sur-reply are **DENIED**.

## I. STATEMENT OF FACTS AND CLAIMS

In November 2015, Plaintiff entered into a Retail Installment Contract and Security Agreement ("Contract") with Byrider Sales of Indiana S, LLC d/b/a J.D. Byrider ("BSI") to finance the purchase of a 2010 Chevrolet Malibu (the "Vehicle"). (Compl. ¶ 6, DN 1; Higgins Decl. Ex. A, DN 5-1 [hereinafter Contract]). The Contract was then assigned by BSI to Byrider Finance, LLC d/b/a CNAC ("CNAC"). (Contract 5). In February 2016, Plaintiff filed a petition for bankruptcy under Chapter 7 of the bankruptcy code. (Compl. ¶ 8). In June 2016, the Bankruptcy Court granted an order of discharge in Plaintiff's bankruptcy case, eliminating her

1

debts to CNAC. (Compl. ¶ 12; *see also* Defs.' Mem. Supp. Mot. Comp. Arbitration Ex. 3, DN 5-3).

In 2017, Plaintiff "discovered that [BSI] made a hard credit inquiry for her Equifax and Trans Union credit reports on January 2, 2017, and that CNAC made a soft, account review inquiry for her Trans Union credit report on January 2, 2017."[1] (Compl. ¶ 14). Plaintiff alleges that each of these inquiries "[was] not made for a permissible purpose . . . ." (Compl. ¶ 24).

Plaintiff filed this action asserting violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, against BSI and CNAC and has alleged that both parties "requested and obtained Ms. McMahan's consumer credit report for a purpose not permitted under 15 U.S.C. § 1681b." (Compl. ¶¶ 26, 28). Defendants have now moved to enforce the arbitration provision in the Contract, which Plaintiff opposes.

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction and the FCRA. *See* 28 U.S.C. § 1331; 15 U.S.C. § 1681p.

## III. DISCUSSION

### A. Defendants' Motion to Compel Arbitration & Dismiss

In ruling on a motion to compel arbitration, courts apply the summary judgment standard in Fed. R. Civ. P. 56(c). *See Arnold v. Rent-a-Center, Inc.*, No. 11-18-JBC, 2011 WL 1810145,

---

[1] "A hard inquiry is essentially a credit check: a full credit inquiry conducted when an individual applies for a loan or line of credit. Each hard inquiry can result in a credit score's reduction by up to five points." *Bowling v. Scott Lowery Law Office, P.C.*, No. 5:13-CV-00091-TBR, 2014 WL 3942280, at *1 (W.D. Ky. Aug. 12, 2014) (citation omitted). In contrast, "[a] 'soft inquiry' is an inquiry that occurs when a person or company checks your credit report as part of a background check. An example of a soft inquiry is when an individual checks his/her credit score. Soft inquiries do not affect credit scores in any way." *Burry v. Cach LLC*, No. 14-2139, 2015 WL 328182, at *1 n.2 (E.D. Pa. Jan. 22, 2015) (citation omitted). The FCRA "makes no distinction between hard and soft inquiries; either is permissible if made for an appropriate purpose." *Bowling*, 2014 WL 3942280, at *2.

at *2 (E.D. Ky. May 12, 2011) ("This court will treat the motion to compel arbitration as one for summary judgment . . . ."); *Weddle Enters., Inc. v. Treviicos-Soletanche, J.V.*, No. 1:14CV-00061-JHM, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014) ("A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard. Instead, courts apply the standard applicable to motions for summary judgment." (citations omitted)). "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks omitted).

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, a written agreement to arbitrate a dispute arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2). In ruling on a motion to compel arbitration:

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.* (citing *Compuserve, Inc. v. Vigny Int'l Fin., Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)). Generally, any doubts regarding arbitrability are to be resolved in favor of arbitration. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citation omitted). *See also Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984) (holding that the FAA preempts state law regarding arbitration).

A party moving to compel arbitration bears the initial burden of presenting prima facie evidence of an agreement to arbitrate. *See Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-CV-00104-JHM, 2016 WL 502061, at *3 (W.D. Ky. Feb. 8, 2016) (citation omitted). If the moving party satisfies its burden, the burden then shifts to the opposing party. *See id.* (citation omitted). "That is, she must come forward with sufficient evidence that, when viewed in the light most favorable to her, would permit a reasonable finder of fact [to] conclude that no valid agreement to arbitrate exists." *Id.* (internal quotation marks omitted) (citation omitted). "Because arbitration agreements are fundamentally contracts, [courts] review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)).

### 1. *Agreement to Arbitrate*

First, the Court must determine whether "a valid agreement to arbitrate exists between the parties . . . ." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (citation omitted). In making that determination, the Court must "be [] satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue . . . ." 9 U.S.C. § 4. "State contract law . . . governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003) (citations omitted).

In this case, the Contract included an arbitration provision stating that "any 'Dispute' between the Parties shall, at the election of Buyer, Seller or Seller's Assignee ("the Parties"), be resolved by a neutral, binding arbitration, and not by a court of law." (Contract 4). The term "Dispute" was defined by the Contract as:

> [A]ny action, dispute, claim or controversy of any kind arising out of, in connection with or in any way related to the Contract, the sale of the Vehicle, financing, contracts, origination, servicing, service agreements, collection, reporting, or any other aspect whatsoever of the past, present or future relationship or conduct of the Parties.

(Contract 4). Thus, the Contract clearly indicated that McMahan agreed to arbitrate any claim arising from a dispute between her and BSI (and its assignee) and to waive her right to a trial. Accordingly, the first prong is satisfied because there is an agreement between the parties to arbitrate.

### 2. *Scope of Arbitration Provision*

The Court must next consider whether Plaintiff's claims fall within the scope of the arbitration provision in the Contract. McMahan argues that her claims fall outside the scope of the provision because Defendants' hard inquiries are based upon a "new credit transaction" rather than the original contract.[2]

First, there is no evidence to support Plaintiff's contention that there was a new transaction. Defendants refute this allegation by proffering a declaration from a document control manager of CNAC, which states:

> When CNAC attempted to recover the Vehicle after the bankruptcy was closed, it was unable to locate it at the address McMahan listed in the Contract and that she furnished to the bankruptcy court. Thus, CNAC and BSI requested the credit reports of McMahan on January 2, 2017, in order to locate and recover its collateral. This was necessary because McMahan did not comply with her stated intention to reaffirm her obligations under the Contract. These credit inquiries related solely to the Contract and the recovery of the Vehicle, and not a "new" credit transaction.

---

[2] Federal law recognizes that a "permissible purpose of consumer reports" includes a "legitimate business need for the information—in connection with a business transaction that is initiated by the consumer; or to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(F).

(Atkins Decl. ¶ 7, DN 12-1). The arbitration clause in the Contract provides that it will apply to "any [d]ispute." (Contract 4). As noted above, "[d]ispute" was defined to include any controversy related in any way to the Vehicle or collection on the financed debt. Thus, the broad terms of the Contract require that McMahan arbitrate her claims arising from collection efforts related to the subject Vehicle.

In addition, McMahan asserts that the arbitration provision cannot be enforced because of the Contract's assignment to CNAC. In addressing this issue, the Court must look to the terms of the Contract. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("The FAA reflects the fundamental principal that arbitration is a matter of contract."). *See also Ferro Corp. v. Garrison Indus.*, 142 F.3d 926, 939 (6th Cir. 1998) ("Arbitration is a creature of contract, and parties should, absent the most extenuating and explicit of circumstance, be required to arbitrate those disputes which they agree to arbitrate."). The Contract explicitly provided that " Buyer understands and acknowledges that the rights and responsibilities afforded to Seller under this arbitration agreement survive any assignment of the Contract by Seller and the Seller can enforce this arbitration agreement in the event a Dispute arises after the assignment of the Contract." (Contract 4). As an assignee, CNAC stands in the shoes of its assignor, BSI. *See Whayne Supply Co. v. Morgan Const. Co.*, 440 S.W.2d 779, 782-83 (1969) ("Generally, an assignee . . . acquires no greater right than was possessed by his assignor . . . , but simply stands in the shoes of the latter, subject to all equities and defenses which could have been asserted against the chose in the hands of the assignor at the time of the assignment." (citations omitted)). Further, the Contract explicitly provides that BSI can require arbitration even after it assigned its rights under the Contract. Therefore, both BSI and CNAC are entitled to enforce the arbitration provision.

### 3. *Congressional Intent to Exclude Claims*

The Court must also determine whether Congress intended for McMahan's claims to be nonarbitratable. As the Supreme Court has noted, the presumption of arbitrability is "particularly applicable" in cases where, like the case *sub judice*, the applicable arbitration provision is broad and requires the submission to arbitration of "any and all disputes" or "any differences arising with respect to the interpretation of [the] contract . . . ." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Here, McMahan's claims are brought under the FCRA. There is no indication that Congress intended to preclude the arbitration of FCRA claims and courts have held that such claims are arbitrable. *See, e.g.*, *Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1065-66 (E.D. Ky. 2015); *Anglin v. Tower Loan of Miss., Inc.*, 635 F. Supp. 2d 523, 527 (S.D. Miss. 2009); *Liedtke v. Frank*, 437 F. Supp. 2d 696, 700 (N.D. Ohio 2006). Accordingly, there is a lack of Congressional intent to exclude Plaintiff's claims from arbitration.[3]

### 4. *Effect of Bankruptcy Discharge*

McMahan also opposes the enforcement of the arbitration provision on the basis of her bankruptcy discharge. This assertion, however, is misplaced. A discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C § 524(a)(2). While the personal liability for the underlying debt is discharged, the discharge does not necessarily terminate the contract. *See Mann v. Equifax Info. Servs.*, No. 12-cv-14097, 2013 U.S. Dist. LEXIS 103210, at *13 (E.D. Mich. May 24, 2013) ("[T]he mere fact that [Plaintiff] was granted a discharge of the debt owed to [the financing company] does not

---

[3] Because all of McMahan's claims must be arbitrated, it is unnecessary for the Court to consider whether a stay is warranted.

mean that the Arbitration Agreement executed in connection with the Contract cannot be enforced with respect to their future disputes which are otherwise covered by the Agreement."); *see also id.* at *9 ("[T]he court sees no inherent conflict between the Bankruptcy Code's purposes and enforcing the Arbitration Agreement with respect to Mann's post-discharge FCRA action against NMAC. The Arbitration Agreement is only in play because of Mann's FCRA claim, not because NMAC is attempting to collect a debt that has been discharged."); *Green Tree Servicing, LLC v. Brough*, 930 N.E.2d 1238 (Ind. Ct. App. 2010) (finding an arbitration clause was not terminated by the defendant's bankruptcy discharge, so that the parties were compelled to arbitrate the defendant's FCRA claim).

While Plaintiff relies on *Jernstad v. Green Tree Servicing, Inc.*, No. 11 C 7974, 2012 U.S. Dist. LEXIS 108988 (N.D. Ill. Aug. 2, 2012), in opposing the enforcement of the arbitration provision, the court there recognized that "[w]hat is discharged is a claim to payment." *Id.* at *6 (citation omitted). In the case *sub judice*, the Contract explicitly provided the arbitration provision would "survive and continue in full force and effect notwithstanding . . . discharge in bankruptcy . . . ." (Contract 4). Thus, by the express terms of the Contract the arbitration provision survived McMahan's bankruptcy discharge.

### 5. *Discovery*

Plaintiff requests that if this Court does not deny Defendants' Motion to Compel Arbitration, then "the Court should allow Ms. McMahan to conduct limited discovery before ruling on Defendants' motion to compel her to arbitrate her claims." (Pl.'s Resp. Mot. Compel Arbitration 11). Plaintiff believes that discovery of the reasons motivating Defendants' inquiries directly relate to whether her claims fall within the scope of the agreement. (Pl.'s Resp. Mot. Compel Arbitration 15).

As stated above, motions to compel arbitration are governed by Rule 56, which provides that a nonmovant must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). In this case, Plaintiff has neither presented an affidavit or declaration, nor does she dispute that she entered into Contract containing the subject arbitration provision. Thus, McMahan has failed to substantiate the need for discovery or to show that any discovery would affect this Court's determination that the parties must arbitrate this dispute.

B.    **Plaintiff's Motion to Amend Complaint**

Plaintiff seeks to amend the Complaint to "correct[] misstatements in the original complaint as to Defendant[s'] request for Plaintiff consumer credit report." (Pl.'s Mot. Am. Compl. 1, DN 10). Defendants object to Plaintiff's motion because Plaintiff's claims would still be subject to arbitration, thus her "amendments would be both futile and prejudicial." (Def.'s Mem. Resp. Pl.'s Mot. Am. Compl., DN 13).

Fed. R. Civ. P. 15(a)(2) provides that leave to amend pleadings should be "freely give[n] . . . when justice so requires." Generally, motions to amend complaints should be granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue . . . of the amendment, [or] futility of amendment . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the Amended Complaint specifically alleges that Plaintiff did not initiate a new credit transaction with Defendants and that Defendants' alleged "hard inquiries" on January 2, 2017, were impermissible. (Am. Compl. ¶¶ 26, 27, 31). If McMahan had initiated any new credit transaction with Defendants, that new transaction may have been completely unrelated to

9

Plaintiff's 2015 purchase of the Vehicle from BSI and therefore ***not*** covered by the arbitration clause in the Contract. The Amended Complaint, however, alleges just the opposite: that there were no independent business dealings between Plaintiff and Defendants. Thus, any actions taken by Defendants must have been related to the Contract,[4] which necessitates arbitration. This is not to say that Defendants' credit inquiries could not have been impermissible, only that McMahan's claims for any violation of the FCRA are required to be arbitrated by the Contract. Under these circumstances, these claims must be arbitrated so that Plaintiff's Motion to Amend would be futile.

      C.      **Plaintiff's Motion for Leave to File Sur-Reply**

Plaintiff has requested leave to file a sur-reply to the motion to compel arbitration. "As many courts have noted, '[s]ur-replies . . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (citation omitted).

McMahon incorrectly asserts that her sur-reply is necessary because of new arguments raised by Defendants' reply. Defendants' reply "is entirely consistent with the proper purpose of a reply brief, to address the opposing party's arguments raised in a response brief." *Liberty Legal Found.*, 875 F. Supp. 2d at 797-98. Through her proposed sur-reply Plaintiff inappropriately seeks the last word on this issue. Accordingly, the motion to file a sur-reply is denied.

---

[4] Plaintiff has not alleged in the Amended Complaint or otherwise any facts contradicting CNAC's declaration substantiating the context of the subject credit inquiries. (Atkins Decl. ¶ 7).

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Leave to File Sur-Reply (DN 14) is **DENIED**;

2. Plaintiff's Motion to Amend Complaint (DN 10) is **DENIED**; and

3. Defendants' Motion to Compel Arbitration and Dismiss (DN 5) is **GRANTED**.

This case is **DISMISSED** and **STRICKEN** from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
September 14, 2017

cc: counsel of record